IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Latoya Robinson,

        Plaintiff,

v.                                     Case No. 1:19-cv-2458-MLB

WebBank, a Utah corporation,

        Defendant.

_____/

## ORDER

This is a Fair Credit Reporting Act ("FCRA") case. Defendant timely filed a petition for costs and reasonable attorney's fees (Dkt. 39) following the Court's Order granting summary judgment in which the Court found Plaintiff acted in bad faith in pursuing the complaint and awarded fees per 15 U.S.C. § 1681n(c). (Dkt. 38 at 16–17.) Plaintiff objected to Defendant's petition for costs and fees claiming both the hourly rate and hours incurred were unreasonable. (Dkt. 43.) Defendant filed a reply in support of its original petition. (Dkt. 44.) The Court held a hearing because Defendant failed to provide sufficient evidence supporting the reasonableness of the fees. Defendant filed supplemental

declarations (Dkt. 45) to which Plaintiff responded (Dkt. 47). Defendant then responded to Plaintiff's objections. (Dkt. 48.) The Court now considers if Defendant's proposed fees are reasonable.

## I. Discussion

### A. Reasonable Attorney's Fees

"The starting point for determining . . . 'a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The product of these two figures is the lodestar." *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)). The lodestar can be adjusted. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The Court has discretion in determining the amount of an award, but "[t]he court's order on attorney's fees must allow meaningful review [and] must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Housing Auth.*, 836 F.2d 1292, 1304 (11th Cir. 1988). "If the court disallows hours, it must explain which hours are disallowed and show why an award of [the] hours would be improper."

*Id.* (citing *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985)); *see also Bivins*, 548 F.3d at 1351 (reductions to requested hours must be concisely and clearly explained). "Ultimately, the computation of a fee award is . . . an exercise of judgment, because there is no precise rule or formula for making these determinations." *Embree v. Medicredit, Inc.*, 752 F. App'x 697, 699 (11th Cir. 2018) (quoting *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001)).

Defendant provided the Court with a lodestar calculation of $60,205 by multiplying what it believed to be the number of hours reasonably expended by a reasonable hourly rate. (Dkts. 39 at 1; 44 at 2–3.) Faegre Drinker Biddle & Reath's ("Faegre Drinker") billed 119.7 hours amounting to $50,037.20. (Dkt. 39-1 ¶ 9.) Their hourly rates varied from $245.67/hour for a paralegal to $551.43/hour for a partner. (*Id.*) McGuireWoods billed 25.1 hours with the associate's hourly rate increasing from $340.00 to $480.00 over the litigation and the partner's rate being $680 resulting in $10,167.80 of fees. (Dkt. 39-2 ¶ 9, at 10, 14, 17, 20, 23, 27, 29, 34–35.) Defendant requests $60,205[1] in attorneys' fees.

---

[1] The Court notes that $50,037.20 (Faegre Drinker) and $10,167.80 (McGuireWoods) totals $61,226.25, which is more than Defendant's total request of $60,205.

The Court determines the attorneys' hourly rates and hours expended reasonable but finds the paralegal's rate unreasonable—not because the Court doubts Ms. Bost is worth every penny of her rate but simple because Defendant has not met its burden of proof in regards to her rate.

### B.   Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (citing *Norman*, 836 F.2d at 1299); see also *Weissinger v. Murray*, No. 1:06-CV-1544, 2009 WL 1971612, at *4 (N.D. Ga. July 2, 2009) ("Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") "Generally, the 'relevant legal community' is that of the place where the case is filed." *Spurlock v. Complete Cash Holdings, LLC*, No. 4:19-CV-219, 2021 WL 1960634, at *3 (N.D. Ga. May 14, 2021) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

An attorney's normal billing rate "is the best evidence of his market rate, although that information is not necessarily conclusive."

*Weissinger*, 2009 WL 1971612, at *4; *see also Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What [an attorney] charges clients is powerful, and perhaps the best evidence of his market rate.")  Reasonableness, however, does not require the parties to choose the cheapest attorneys.  *See Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (finding civil rights litigants did not need to find the nearest and cheapest attorneys).  The court can look either to affidavits or to "its own knowledge and experience concerning reasonable and proper fees" to form an "independent judgment" of the reasonableness of the hourly rate.  *Loranger,* 10 F.3d at 781 (citing *Norman*, 836 F.2d at 1303); *Norman*, 836 F.2d at 1303 ("It is perfectly proper to award attorney's fees based solely on affidavits in the record.").  "[T]he court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support." *Weissinger*, 2009 WL 1971612, at *4.

   1.   **Attorneys' Hourly Rate**

Faegre Drinker's affidavit reflects hourly attorney rates of $534.93 for Elsa Bullard, $551.43 for Erin Hoffman, $360.07 for Jessica Savran, and $391.50 for Laura Reilly.  (Dkt. 39-1 at 5.)  Their rates are "top of

market rates" (Dkt. 44 at 4), but the firm provided Defendant a 10% discount throughout the course of litigation. (Dkts. 44 at 4; 39-1 ¶ 9.) Faegre Drinker originally provided only Jessica Savran's affidavit (Dkt. 39-1) as justification for all the attorneys' hourly rates. Ms. Hoffman, Ms. Bullard, Ms. Savran, and Ms. Bost subsequently provided supplemental affidavits supporting the reasonableness of the hourly fees. (Dkt. 45.) The supplemental affidavits provided the Court with "satisfactory evidence" to determine the reasonableness of such fees. *Norman*, 836 F.2d at 1299. In addition to the affidavits, the Court can "rely on itself as an expert . . . and may consider its own knowledge and experience concerning reasonable and proper fees [to] form an independent judgment." *Weissinger*, 2009 WL 1971612, at *5.

Ms. Hoffman has worked at Faegre Drinker for over 10 years but has practiced for more than 15 years. (Dkt. 45-1 ¶ 3.) Her supplemental affidavit sufficiently shows her high level of expertise dealing with FCRA cases. (*Id.* ¶¶ 3–6.) Ms. Bullard has been at Faegre Drinker nearly as long as Ms. Hoffman and devotes a "substantial part of [her] practice" to defending consumer cases. (Dkt. 45-2 ¶¶ 3, 9.) Ms. Bullard plays a large role in working on Defendant's cases nationally. (*Id.* ¶ 7.) Ms. Reilly is

no longer at the firm, but Ms. Bullard's affidavit provided Ms. Reilly's educational background and that she "had over 3 years of general litigation experience at the time she worked on this matter."[2] (*Id.* ¶ 12.) Ms. Savran's supplemental affidavit provided the Court with the additional information her original affidavit was lacking and demonstrated she is "known within [the] firm and community as an expert in the FCRA." (Dkt. 45-3 ¶¶ 5–6.) All supplemental affidavits declared the attorneys' hourly rates are set by Faegre Drinker. (Dkts. 45-1 ¶ 9; 45-2 ¶ 10; 45-3 ¶ 7.) Faegre Drinker sets their rates "after in-depth market research" including evaluating market data and soliciting rate surveys. (Dkt. 45-1 ¶ 8.) The firm's research supports the reasonableness of the hourly rate.

Plaintiff does not argue the McGuireWoods' rates are unreasonable. M. Laughlin Allen's hourly rate increased from $340 to $480 throughout her involvement in the case. (Dkt. 39-2 ¶ 12.) Seth Schaeffer charged a substantially higher hourly rate of $680. (Dkts. 39-2 at 14.) The Court,

---

[2] Plaintiff argues Ms. Reilly's failure to submit a declaration disallows Defendant to recover her fees. (Dkt. 47 at 3–4.) The Court rejects the argument because the information provided in Ms. Bullard's affidavit is sufficient.

relying on affidavits and its own experience, finds the rates charged by all attorneys at Faegre Drinker and McGuireWoods reasonable.

### 2.   Paralegal Hourly Rate

Faegre Drinker seeks to recover an hourly rate of $245.67 for paralegal Kristina Thompson Bost.  (Dkt. 39-1 at 5.)  Ms. Bost has been working as a paralegal for about 10 years.  (Dkt. 45-4 ¶ 3.)  She has been at Faegre Drinker since 2015 and works exclusively in the financial services sector.  (*Id.* ¶ 4.)  Ms. Bost is known within the firm as an expert in FCRA litigation.  (*Id.* ¶¶ 5, 7.)  Like the attorneys, Faegre Drinker sets Ms. Bost's hourly rate, and Defendant was provided a 10% discount throughout the litigation.  (*Id.* ¶ 7.)  The Court notes Defendant provides no information about a reasonable hourly rate for paralegals in the Northern District of Georgia.  And her hourly rate appears substantially higher than what other courts have found to be reasonable.  See *Walker v. Commissioner, Social Sec. Admin.*, 844 F. App'x 104, 106, 109 (11th Cir. 2021) (Magistrate judge looked to other district court cases to determine "that $125 per hour was a reasonable rate" for work comparable to that of a paralegal); *Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1372 (N.D. Ga. 2008) (finding paralegal fees of

$125/hour were reasonable); *but see Celestine v. JPMorgan Chase Bank*, No. 17-CV-20915, 2018 WL 6812675, at *5 (S.D. Fla. Oct. 24, 2018) ("While $191 per hour may be high for a paralegal's hourly rate, [the paralegal] has twenty-three years of experience, and she aptly applied that experience here to start pleadings and perform other skilled, non-administrative tasks."). The Court determines Defendant has not provided sufficient information to support Ms. Bost's rate of $245.67 per hour. The Court is not saying the rate is unreasonable. Ms. Bost is a skilled paralegal and (having practiced law) the Court understands the importance and value of really good paralegals. She is probably worth every penny of the rate charged. But Defendant has not provided the Court adequate information to make that determination and the Court does not otherwise have an inciteful understanding of current paralegal rates. It is simply a matter of proof, not skill or value.

After considering Ms. Bost's training, skills, and experiences and looking at other district court cases, the Court finds $125 per hour is a reasonable rate. As such, the Court reduces Ms. Bost's hourly rate from $245.67 to $125. Ms. Bost billed 3.9 hours (Dkt. 39-1). Of those hours, 1.9 were spent drafting an answer to the complaint. (*Id.* at 10.) The rest

of the hours were spent updating the file or coordinating deadline tracking. (*Id.* at 8–11, 18.) "Paralegal fees are generally recoverable in an attorney's fee award where the paralegal performs 'work traditionally done by an attorney.'" *Gowen Oil Co. v. Abraham*, No. CV 210-157, 2012 WL 1098568, at *8 (S.D. Ga. Mar. 30, 2012) (quoting *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988)). Drafting an answer is clearly within the realm of attorney work. The Court also finds it reasonable that, had Ms. Bost not updated the file or tracked deadlines, then an attorney would have done those tasks. These tasks are not clerical tasks that would otherwise be unrecoverable. *See Cormier v. ACAC Inc.*, No. 13-0158-CG-M, 2013 WL 6499703, at *5 (S. D. Ala. Dec. 11, 2013) (tasks such as emailing, faxing, and obtaining pleadings from court's database are not recoverable). The Court finds Ms. Bost's hours to be reasonable. Faegre Drinker will thus recover $487.50[3] for Ms. Bost's work.

### C. Reasonable Number of Hours

The Court now must decide the number of hours "reasonably expended" during litigation. *Loranger*, 10 F.3d at 782. The number of

---

[3] The Court has reduced the award by $470.61. Ms. Bost's original hourly rate of $245.67 would have resulted in Faegre Drinker recovering $958.11 in fees for Ms. Bost's work.

10

hours is reviewed by the "hour-by-hour rule" set forth by *Norman*. *Id.* ("Implicit in the *Norman* hour-by-hour rule is the assumption that a district judge can feasibly and expeditiously engage in such a precise review.") "[T]he court exercises its discretion in determining what constitutes reasonable hours." *Am. Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1226 (M.D. Fla. 2007) (citing *Gray v. Lockheed Aeronautical Sys, Co.*, 125 F.3d 1387 (11th Cir. 1997)).

Faegre Drinker worked 131 hours and billed for 121.1 hours over nearly two years of litigation. Plaintiff contends Defendant has not met its burden to show that the number of hours billed are reasonable. (Dkt. 43 at 7.) Plaintiff challenges (1) the hours spent on Defendant's motion to dismiss and (2) the number of attorneys who billed for a simple case. (*Id.* at 7–10.)

Of the total hours, 38.9 hours, or roughly 32%, involved a motion to dismiss which Defendant concedes was never filed. (Dkts. 44 at 9; 43 at 8.) The Court acknowledges that Defendant invoiced the client for only 30.7 hours related to the motion to dismiss. (Dkt. 39-1 at 8–10.) It is reasonable that research and preparation was necessary to determine whether WebBank could file a well-reasoned motion to dismiss soundly

11

based in law. According to Defendant, it was not until October 24, 2019, that counsel decided there was not enough support to make a res judicata argument and the other arguments in the motion to dismiss would be stronger at the summary judgment stage. (Dkt. 48 at 5.) Faegre Drinker provided sufficient evidence demonstrating the hours worked on the motion to dismiss were reasonable. The Court acknowledges Defendant later used the research from the motion to dismiss for preparing its motion for summary judgment. (Dkt. 44 at 10.) The issues in the case are inherently complicated, so it is reasonable for a substantial amount of time to be spent doing research. After Faegre Drinker determined they would not move to dismiss, and instead filed an answer, Defendant no longer billed for anything related to the motion to dismiss.[4] That Defendant, after researching its options, decided it could not reasonably pursue a motion to dismiss does not preclude those fees. Defendant's attorneys did exactly what good attorneys should do—research

---

[4] Plaintiff argued during the hearing that Defendant continued to bill for work related to the Motion to Dismiss after the Answer was filed. Defendant filed the answer on October 25, 2019 (Dkt. 6) and did not bill the client for the .2 hours that Ms. Reilly conferred with Ms. Bullard on next steps. The Court does not find that Defendant unreasonably billed for time after the answer was filed.

arguments and pursue only those they conclude have merit. Defendant should not be penalized for acting reasonably. Indeed, to preclude fees as a matter of law just because attorneys' determine a motion to dismiss is ill advised would perversely incentivize parties to file frivolous motions merely to preserve their rights to attorneys' fees. The Court finds no reason to reduce the hours and, therefore, finds the hours billed to be reasonable.

McGuireWoods was serving as local counsel and did not need to conduct as much research nor prepare initial drafts. (Dkt. 39-2 ¶ 10.) As such, McGuireWoods billed only 25.1 hours. (*Id.* ¶ 9.) These hours mainly consisted of communicating with Faegre Drinker attorneys and revising motions. (*Id.* ¶ 8.) The Court finds all hours charged by McGuireWoods to be reasonable.

Plaintiff also argues an unreasonable number of attorneys worked on the matter. (Dkts. 43 at 9–10; 47 at 4.) Yet it is common practice to have "multiple attorneys performing discrete tasks with respect to researching, drafting, and filing various pleadings and motions with the Court." *Thomas v. Mitsubishi Motors N. Am.*, No. 1:06-CV-2679, 2009 WL 10670123, at *1 (N.D. Ga. Feb. 13, 2009). Spreading the work out

among multiple attorneys "likely result[s] in a more efficient work process and lower total fees." *Id.*  All attorneys performing work may be compensated if "they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302.  All attorneys were working as a group, but Ms. Bullard and Ms. Savran did a vast majority (over 80%) of the work for Faegre Drinker.  (Dkts. 39-1 ¶ 9; 44 at 12–13.) And all but .6 of the 25.1 hours McGuireWoods billed was billed by Ms. Allen.  (Dkt. 39-2 at 9–35.)  The Court rejects Plaintiff's argument that having six attorneys work on a case is unreasonable.  The Court reduces the requested fees by $470.61 and awards Defendant $59,734.39.

## II. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Petition for Fees and Costs.  (Dkt. 39.)  Plaintiff is **ORDERED** to pay Defendant $59,734.39 in attorneys' fees and expenses.

**SO ORDERED** this 15th day of October, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE